```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
----------------------------------------X
                                        :
MARKSMEN, INC.,                         :   10 Civ. 214 (DLC)
                    Plaintiff,          :
                                        :   OPINION & ORDER
          -v-                           :
                                        :
INTERBRAND CORPORATION,                 :
                                        :
                    Defendant.          :
                                        :
----------------------------------------X
```

APPEARANCES:

For Plaintiff:
David G. Ebert
Mioko C. Tajika
Ingram Yuzek Gainen Carroll & Bertolotti, LLP
250 Park Avenue, 6th Floor
New York, NY 10177

For Defendant:
Neal H. Klausner
Allie Lin
Davis & Gilbert LLP
1740 Broadway
New York, NY 10019

DENISE COTE, District Judge:

   This lawsuit concerns a dispute over the interpretation of an express indemnity provision within a commercial services contract governed by California law.  Plaintiff Marksmen, Inc. ("Marksmen") alleges that defendant Interbrand Corporation ("Interbrand") has breached their contract by failing to indemnify Marksmen for costs incurred defending a fraud lawsuit in Texas in 2008-09 (the "Texas Litigation").  On March 11,

2010, Interbrand moved to dismiss the complaint on the theory that it has no duty to pay defense costs incurred by Marksmen in any litigation in which Marksmen is accused of fraud.  For the following reasons, Interbrand's motion is denied.

BACKGROUND

The following facts, taken from Marksmen's January 12, 2010 complaint (the "Complaint") and documents annexed thereto, are assumed to be true for the purposes of this motion.  Additional undisputed facts are drawn from court records in the Texas Litigation.

The plaintiff-indemnitee, Marksmen, is a professional agent engaged in the business of acquiring intellectual property rights, including domain names and trademarks, for its clients. The defendant-indemnitor, Interbrand, is a consultancy engaged in the business of creating and promoting brand identities for its corporate clients.  Interbrand was retained by a corporate client to assist with naming and branding a new healthcare entity.  Interbrand developed the name "Covidien" for this new entity, and it sought to acquire the Internet domain name Covidien.com (the "Domain Name") for its use.  At that time, the Domain Name was owned by Arisma Group, LLC ("Arisma").

In December 2006, Marksmen and Interbrand entered into an Acquisition Services Agreement (the "Agreement") by which

Interbrand engaged Marksmen to acquire the Domain Name.[1] Marksmen then set out to purchase the Domain Name from Arisma in accordance with the terms of the Agreement.  On January 4, 2007, an agreement was finalized between the president of Arisma and a Marksmen employee, the latter acting under a pseudonym, whereby Arisma would sell the Domain Name to Marksmen for $13,000 (the "Sale Contract").  The sale was effected on January 22, 2007.  Several days later, Arisma's president learned that the ultimate user of the Domain Name would be Interbrand's client, the new healthcare entity Covidien.

In January 2008, Arisma filed suit in Texas state court.  The lawsuit was subsequently removed to the United States District Court for the Northern District of Texas (the "Texas Court") in July 2008.[2]  On December 24, 2008, Arisma filed its third amended complaint in the Texas Litigation, adding Marksmen and Interbrand as defendants and asserting claims of fraudulent inducement, fraudulent misrepresentation, fraud by non-disclosure, and in the alternative for negligent misrepresentation.  Arisma sought rescission of the Sale

---

[1] The Agreement is attached to the Complaint as Exhibit A.

[2] The Complaint represents that Arisma sued both Marksmen and Interbrand in January 2008.  A review of the Texas Court's docket records reveals, however, that Marksmen and Interbrand were not formally named as defendants in the Texas Litigation until December 2008, when Arisma's third amended complaint was filed.

3

Contract, court costs, and attorney's fees.

Marksmen alleges that, upon learning of the Texas Litigation, Marksmen "timely notified" Interbrand of the claims against it and demanded that Interbrand defend Marksmen pursuant to the Agreement.  The Agreement included an indemnification provision providing that

> Client [Interbrand] agrees to indemnify and hold harmless Marksmen . . . from and against any and all losses, claims, damages, liabilities, and <u>expenses</u>, joint and several (<u>which shall include</u>, but not be limited to, <u>counsel fees and any and all litigation expenses</u>) to which [Marksmen] may become subject arising out of Marksmen's activities under this Agreement.

(Emphasis added).  On May 6, 2008, Interbrand's general counsel advised Marksmen that Interbrand would "fulfill [its] obligations as outlined in the [Agreement]" and requested that Marksmen "[p]lease forward [him] all pertinent information." Thereafter, however, Interbrand refused to reimburse Marksmen for the attorneys' fees and expenses incurred by Marksmen in the Texas Litigation.

Plaintiff filed this lawsuit on January 12, 2010.[3]  Marksmen seeks to recover its attorney's fees and expenses incurred during the Texas Litigation as well as its attorney's fees and

---

[3] Subject matter jurisdiction is based on diversity of citizenship pursuant to 28 U.S.C. § 1332.  Marksmen is a Delaware corporation with its principal place of business in California.  Interbrand is a New York corporation with its principal place of business in New York.

4

expenses from this enforcement action.  Interbrand moved to dismiss on March 11; Marksmen opposed on April 12; and the motion became fully submitted with Interbrand's reply on April 23.

DISCUSSION

"Under Federal Rule of Civil Procedure 8(a)(2), a pleading must contain a 'short and plain statement of the claim showing that the pleader is entitled to relief.'"  Ashcroft v. Iqbal, 556 U.S. __, 129 S. Ct. 1937, 1949 (2009).  This rule "does not require 'detailed factual allegations,'" id. (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007)), but "[a] pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'"  Id. (quoting Twombly, 550 U.S. at 555).

A trial court considering a Rule 12(b)(6) motion "accepts all well-pleaded allegations in the complaint as true, drawing all reasonable inferences in the plaintiff's favor."  Operating Local 649 Annuity Trust Fund v. Smith Barney Fund Mgmt. LLC, 595 F.3d 86, 91 (2d Cir. 2010).  To survive dismissal, "a complaint must allege a plausible set of facts sufficient 'to raise a right to relief above the speculative level.'"  Id. (quoting Twombly, 550 U.S. at 555).  Applying the plausibility standard is "a context-specific task that requires the reviewing court to

5

draw on its judicial experience and common sense." Id. at 1950.

"In determining the adequacy of the complaint, the court may consider any written instrument attached to the complaint as an exhibit or incorporated in the complaint by reference, as well as documents upon which the complaint relies and which are integral to the complaint." Subaru Distribs. Corp. v. Subaru of Am., Inc., 425 F.3d 119, 122 (2d Cir. 2005) ("Subaru"); see also Chapman v. N.Y. State Div. for Youth, 546 F.3d 230, 234 (2d Cir. 2008). The court is "not obliged to accept the allegations of the complaint as to how to construe such documents, but at this procedural stage, [the court] should resolve any contractual ambiguities in favor of the plaintiff." Subaru, 425 F.3d at 122.

The parties agree that California law governs the interpretation of the Agreement. Under California law, "[t]he fundamental goal of contractual interpretation is to give effect to the mutual intention of the parties." State Farm Gen. Ins. Co. v. JT's Frames, Inc., 181 Cal. App. 4th 429, 444 (Ct. App. 2d Dist. 2010) (citation omitted). "If contractual language is clear and explicit, it governs." State v. Allstate Ins. Co., 45 Cal. 4th 1008, 1018 (2009) (citation omitted). "The written provisions of a contract are to be understood in their ordinary and popular sense, rather than according to their strict legal meaning; unless used by the parties in a technical sense, or

unless a special meaning is given to them by usage." Schaffter v. Creative Capital Leasing Group, LLC, 166 Cal. App. 4th 745, 751 (Ct. App. 4th Dist. 2008).  Courts "do not have the power to create for the parties a contract that they did not make and cannot insert language that one party now wishes were there." Forecast Homes, Inc. v. Steadfast Ins. Co., 181 Cal. App. 4th 1466, 1476 (Cal App. 4th Dist. 2010) (citation omitted).  "That the parties dispute a contract's meaning does not render the contract ambiguous; a contract is ambiguous [only] if reasonable people could find its terms susceptible to more than one interpretation."  Doe 1 v. AOL LLC, 552 F.3d 1077, 1081 (9th Cir. 2009) (citation omitted) (applying California law).

This dispute concerns a contractual indemnity clause. "Express indemnity [is] an obligation that arises by virtue of express contractual language establishing a duty in one party to save another harmless upon the occurrence of specified circumstances."  Prince v. Pac. Gas & Elec. Co., 45 Cal. 4th 1151, 1158 (2009) (citation omitted); see also Cal. Civ. Code § 2772 ("Indemnity is a contract by which one engages to save another from a legal consequence of the conduct of one of the parties, or of some other person.").  "Express indemnity generally is not subject to equitable considerations . . . ; rather, it is enforced in accordance with the terms of the contracting parties' agreement."  Prince, 45 Cal. 4th at 1158

7

(citation omitted). "'[E]xpress indemnity allows contracting parties 'great freedom to allocate [indemnification] responsibilities as they see fit,' and to agree to 'protections beyond those afforded by the doctrines of implied or equitable indemnity.'" Id. (quoting Crawford v. Weather Shield Mfg., Inc., 44 Cal. 4th 541, 551-52 (2008)). "When the parties knowingly bargain for the protection at issue, the protection should be afforded." Crawford, 44 Cal. 4th at 551 (citation omitted).

Under California law, indemnity agreements are interpreted in accordance with general principles of contract interpretation. Id.; Carr Bus. Enters., Inc. v. City of Chowchilla, 166 Cal. App. 4th 14, 20 (Ct. App. 5th Dist. 2008) ("An indemnity agreement is to be interpreted . . . using the same rules that govern the interpretation of other contracts."). There are, however, two important qualifications. First, California law inserts by statute certain terms into all indemnification contracts, "unless a contrary intention appears." Cal. Civ. Code § 2778; see Crawford, 44 Cal. 4th at 553 ("[T]he obligations set forth in section 2778 thus are deemed included in every indemnity agreement unless the parties indicate otherwise."). Second, to the extent they are ambiguous, noninsurance indemnity contracts are construed differently than insurance contracts. While "[a]mbiguities in a

8

policy of insurance are construed against the insurer," in noninsurance contexts, "it is the indemnitee who may often have the superior bargaining power, and who may use this power unfairly to shift to another a disproportionate share of the financial consequences of its own legal fault."  Crawford, 44 Cal. 4th at 552; see also Heppler v. J.M. Peters Co., 73 Cal. App. 4th 1265, 1278 (Ct. App. 4th Dist. 1999) ("Indemnity provisions are to be strictly construed against the indemnitee . . . .").

The Agreement creates in Interbrand a clear contractual duty to indemnify Marksmen for "counsel fees and any and all litigation expenses" to which Marksmen "may become subject arising out of Marksmen's activities under this Agreement." Interbrand contends, however, that under California law, for an indemnitor to be obligated to indemnify losses resulting from the indemnitee's own "active negligence," such a result must be made explicit in the contract.[4]  "In the context of noninsurance

---

[4] California law distinguishes between "active" and "passive" negligence:

> "Passive negligence is found in mere nonfeasance, such as the failure to discover a dangerous condition or to perform a duty imposed by law.  Active negligence, on the other hand, is found if an indemnitee has personally participated in an affirmative act of negligence, was connected with negligent acts or omissions by knowledge or acquiescence, or has failed to perform a precise duty which the indemnitee had agreed to perform."

9

indemnity agreements, if a party seeks to be indemnified for its own active negligence, or regardless of the indemnitor's fault, the contractual language on the point 'must be particularly clear and explicit, and will be construed strictly against the indemnitee.'" Prince, 45 Cal. 4th at 1158 (quoting Crawford, 44 Cal. 4th at 552) (emphasis omitted); see also Bldg. Maint. Servs. Co. v. AIL Sys., Inc., 55 Cal. App. 4th 1014, 1021 (Ct. App. 2d Dist. 1997) ("[A]n agreement for indemnification against one's own negligence is not favored and is an exception to the general rule, [and thus] an agreement to indemnify an actively negligent indemnitee will not be implied in the absence of express and explicit language." (citation omitted)).

Because the Agreement's indemnity clause does not explicitly contemplate negligence by the indemnitee, it is a "general indemnity clause." See Rooz, 55 Cal. App. 4th at 583 ("If an indemnity clause does not specifically address the issue of an indemnitee's negligence, it is referred to as a 'general' indemnity clause."). "While courts may construe such general indemnity clauses to provide indemnity for losses resulting from an indemnitee's 'passive' negligence, as a general rule courts in the past have refused to allow indemnification for 'active' negligence." Id. Given that the Agreement contains a general

---

Rooz v. Kimmel, 55 Cal. App. 4th 573, 582 n.5 (Ct. App. 1st Dist. 1997) (quoting Rossmoor Sanitation, Inc. v. Pylon, Inc., 13 Cal. 3d 622, 629 (1975)).

indemnity clause, Interbrand contends that, because the Texas Litigation concerned allegations of fraud -- which it asserts are analogous to active, not passive, negligence -- Interbrand need not pay Marksmen's defense costs.

Marksmen's motion to dismiss cannot succeed at this juncture for at least two reasons. First, Interbrand has not shown that Marksmen was negligent -- "actively" or otherwise. The Texas Litigation, of which Marksmen requests judicial notice, resulted in a finding that Marksmen was liable neither for fraud nor for negligent misrepresentation. See Arisma Group, LLC v. Trout & Zimmer, Inc., No. 08 Civ. 1268-L, 2009 WL 3075203 (N.D. Tex. Sept. 25, 2009) (granting a motion to dismiss as to the negligent misrepresentation claim); Arisma Group, LLC v. Trout & Zimmer, Inc., No. 08 Civ. 1268-L, 2009 WL 3573418 (N.D. Tex. Oct. 30, 2009) (granting summary judgment for Marksmen on the fraud claims).

Second, even if it were already established that Marksmen was actively negligent, Interbrand has not shown as a matter of law that the Agreement did not contemplate that Interbrand would indemnify Marksmen for misrepresentation claims made by the Domain Name's seller arising out of Marksmen's service as

11

Interbrand's agent.[5]  Notwithstanding the principle that indemnity for active negligence must be "particularly clear and explicit," Prince, 45 Cal. 4th at 1158 (citation omitted), California courts increasingly eschew the traditional presumption-based analysis in favor of a contextual approach when addressing whether an indemnity clause covers losses resulting from an indemnitee's negligence.  See Heppler, 73 Cal. App. 4th at 1276 (noting that the "active-passive dichotomy" is not "wholly dispositive" and that courts should "eschew[] a 'mechanical application'" in favor of a "contractual interpretation" approach (citation omitted)).  To determine whether parties intended their indemnity agreement to embrace third-party negligence claims, California courts have sometimes considered extrinsic evidence, such as the commercial context and the nature of the underlying agreement.  See, e.g., Cont'l Heller Corp. v. Amtech Mech. Servs., Inc., 53 Cal. App. 4th 500, 506 (Ct. App. 2d Dist. 1997) (holding, inter alia, that enforcing an indemnity clause would be "commercially reasonable" because the "language of the agreement at issue . . . is commonly found in indemnity agreements between contractors and subcontractors" and because both parties were "large, sophisticated construction enterprises"); see also In re

---

[5] Indeed, Interbrand may well have engaged Marksmen's services for the express purpose of disguising the identity of the ultimate purchaser of the Domain Name from the seller, Arisma.

Imperial Credit Indus., Inc., 527 F.3d 959, 966 (9th Cir. 2008) (applying California law) ("Mutual intent is determined by the words used in the agreement, as well as extrinsic evidence of such objective matters as the surrounding circumstances under which the parties negotiated or entered into the contract; the object, nature and subject matter of the contract; and the subsequent conduct of the parties." (citation omitted)).

Interbrand's argument depends on ignoring the foregoing indemnity analysis and instead focusing exclusively on its belief that there was no duty to defend.[6] Interbrand argues that the fact that Marksmen was found not liable for fraud is immaterial, because "the duty to defend does not depend on the outcome of the litigation," and that what matters is that affirmative misconduct was at least alleged. Interbrand concludes that because it "did not have a duty to defend Marksmen in the Texas action, [it] therefore does not now have a duty to reimburse Marksmen for its defense costs." In so arguing, Interbrand assumes that any putative obligation to reimburse Marksmen's defense costs in the Texas Litigation could

---

[6] In opposition, Marksmen also assumes that its ability to prevail in this lawsuit depends entirely on "[whether] Interbrand became obligated to defend Marksmen upon Marksmen's timely tender of the claim." The Court need not accept Marksmen's interpretation of the Agreement, however. See Subaru, 425 F.3d at 122.

only flow, if at all, from duties created by statute.[7]  In Crawford, the California Supreme Court observed that the statutory duty to defend extends only to "claims 'embraced by the indemnity,'" which are "those which, at the time of tender, allege facts that would give rise to a duty of indemnity."  Id. (quoting Cal. Civ. Code § 2778(4)).  Interbrand thus argues that, because the Texas Litigation concerned allegations of "affirmative intentional misconduct," Interbrand had no duty to defend because accusations of active negligence do not represent "facts that would give rise to a duty of indemnity."

Whatever the merits of Interbrand's argument that it had no duty to defend Marksmen, Interbrand has overlooked the Agreement's express contractual duty to indemnify Marksmen for any "counsel fees and any and all litigation expenses" incurred.  "A duty to defend another" is "different from a duty expressed simply as an obligation to pay another, after the fact, for defense costs the other has incurred in defending itself."  Crawford, 44 Cal. 4th at 553; see also id. at 558 (noting that

---

[7] Section 2778(3) "provides that a promise of indemnity against claims, demands, or liability 'embraces the costs of defense against such claims, demands, or liability' insofar as such costs are incurred reasonably and in good faith."  Crawford, 44 Cal. 4th at 553 (quoting Cal. Civ. Code § 2778(3)) (emphasis omitted).  Section 2778(4) further provides that "the indemnitor 'is bound, on request of the [indemnitee], to defend actions or proceedings brought against the [indemnitee] in respect to the matters embraced by the indemnity."  Id. (quoting Cal. Civ. Code § 2778(4)) (emphasis omitted).

the duty to defend is "distinct and separate from the contractual obligation to pay an indemnitee's defense costs, after the fact"). Indeed, California courts have contemplated that parties could, by contract, agree that an indemnitor will pay the indemnitee's defense costs even if the duty to defend provided by § 2778(4) does not arise. See City of Watsonville v. Corrigan, 149 Cal. App. 4th 1542, 1547 (Ct. App. 6th Dist. 2007) ("[An] indemnitee may not recover the expenses of his defense unless the agreement so provides or unless there is pleading and proof which brings the claim therefor within the provisions of subdivision 4, section 2778." (citation omitted)). Thus, in the absence of authority showing that the Agreement must be construed against its plain meaning that Interbrand should indemnify Marksmen for "any and all litigation expenses . . . arising out of Marksmen's activities under this Agreement," Interbrand's motion must be denied.

## CONCLUSION

Interbrand's March 11, 2010 motion to dismiss is denied. A separate scheduling Order accompanies this Opinion.

SO ORDERED:

Dated:   New York, New York
         June 28, 2010

                                      _____
                                           DENISE COTE
                                  United States District Judge

15